UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

JILL STEVENSON,                                                   Case no. 19-12869-t7

    Debtor.

JILL STEVENSON,

    Plaintiff,

v.                                                                        Adv. no. 19-1085-t

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

    Defendant.

## OPINION

Before the Court is Defendant's motion for summary judgment on Debtor's student loan "undue hardship" discharge complaint. Based on Debtor's discovery responses, Defendant asks for a judgment that her student loans are nondischargable. The matter has been fully briefed and argued. The Court finds that Debtor's original theory of undue hardship, i.e., that the potential income tax consequences of future debt forgiveness create the hardship, fails. Defendant is entitled to a summary judgment on that point. However, Debtor's response to the summary judgment motion raises a genuine issue whether she can afford the monthly loan payments. As a result, the balance of Defendant's motion must be denied.

A.     Facts.

    The following facts are undisputed:[1]

---

[1] The Court takes judicial notice of its docket in this case, to consider the contents of the docket but not the truth of the matters asserted therein. *Johnson v. Spencer,* 950 F.3d 680, 705 (10th Cir. 2020).

In 2002 Debtor enrolled at Thomas M. Cooley Law School in Lansing, Michigan. After completing 87 of the 90 credits required to graduate, Debtor's GPA was 2.0. In her final semester her GPA fell to 1.9, and she was academically dismissed. Debtor never returned to law school. Since 2006, Debtor has worked as a paralegal. Her law school education has been relevant to her work.

Debtor paid for law school by taking out "Stafford Loans," which are insured by the United States Department of Education. In total, Debtor borrowed $90,928.60 under this program. The loans have accrued interest; when she filed this proceeding, Debtor's loan balance was $114,640.90.

In 2006 Debtor enrolled in the Department's Income-Based Repayment Plan (the "IBRP"), which allows her to make monthly payments at a reduced rate based on her discretionary income. Debtor has made monthly loan payments under her IBRP for 14 years.[2] If Debtor continues to make the required monthly payments, the outstanding unpaid balance of her student loans will be forgiven in 11 years.

Debtor works for a local law firm. Debtor had gross income of $41,496 in 2017 and 2018. Her gross income on the petition date was about $43,680 a year. Under her IBRP, Debtor is required to pay $259.84 a month on her student loan debt.

Debtor is 53 years old. She has no dependents. She drives a 2005 Nissan Xterra worth about $1,000. She lives with her parents, who are in their 80s, in a house owned by them. Debtor does not pay rent. She pays her own household expenses. Debtor's parents own a strip mall which

---

[2] Debtor has worked as a paralegal in three law firms at hourly wages as low as $16.00/hour and as high as $22.00/hour. She also went through a period of unemployment for approximately 7 months. Throughout these fluctuating employment conditions, Debtor was able to make her monthly IBRP payments.

generates income of $7,500 a month. Debtor expects to inherit one-fourth of her parents' estate someday.

Debtor filed this chapter 7 case on December 15, 2019. Her schedules I and J reflect monthly income of $2,732.20 and monthly expenses of $3,018.50, for a net monthly income of negative $286.30.

The chapter 7 trustee filed a "no asset" report on January 29, 2020. Debtor received a discharge on March 26, 2020. The bankruptcy case was closed the same day.

Debtor commenced this proceeding on December 16, 2019, seeking to discharge her student loan debt. She asserts:

> 15. It is likely, based on [Debtor's] economic situation, education, and skills, that even after making payments over twenty-five years the balance will continue to grow and remain significant (approximately $145,500.00 in 2031) and forgivingness after twenty-five years of payments will have substantial tax liability (approximately $47,600.00).
> . . . .
>
> 20. Her income-based repayment plan is not substantial enough to ever pay off her student loans and the balance due continues to grow. The income-based repayment plan places [her] at a disadvantage because she will never be able to make headway against the debt.
>
> 21. So long as [she] remains responsible for these loans she will never be able to afford her own home or reasonably support herself.
>
> 22. Excepting the loans from discharge would impose an undue hardship upon [her].

In discovery, Debtor answered certain interrogatories as follows:

> **Interrogatory No. 2:** State fully all facts upon which you base your claim of undue hardship, including identifying all persons who you believe will suffer undue hardship and identify the hardship suffered by those persons, if your student loan debt is not discharged.
>
> **Answer:** I have twelve federal student loan debts attributed towards my law school education. The original loan total was $90,928.60. Because I am on income-based

repayment the current projected total loan balance . . . is $116,389.47. With interest accruing on the loans, I will never be able to repay those loans in my lifetime.

My monthly income-based repayment amount is $259.84. My standard, non-income based repayment amount would be $1,064.28 per month—almost 50% of my net monthly income. *The monthly income-based payment amount, in and of itself, does not present a hardship.*[3] The total loan balance, the fact that it will never be paid in full, and ultimately will be forgiven in approximately 11 years, will result in a substantial tax liability. In 11 years, I will be 64 years of age and approaching retirement. This presents an undue hardship on me.

No matter what the income-based repayment plan might be, the plan payment . . . is never going to be enough to amortize the debt or make a significant dent in the growing balance[] owed.

. . . .

**Interrogatory No. 7:** State the maximum amount you believe you could pay per month toward your student loans without such payment imposing an undue hardship on you or your dependents, and describe in detail how you calculated this figure.

**Answer:** $259.84—This number is based on the calculations provided by Nelnet[4] pursuant to my 2019 application for income-based repayment.

ECMC moved for summary judgment on July 14, 2020, arguing that Debtor's interrogatory responses show that Debtor's student loan debt does not impose an undue hardship.

In response, Debtor submitted an affidavit stating, inter alia, "My average monthly expenses have routinely exceeded my net income since 2010" and "While I have been paying my student loans continuously since 2006, given my current income levels and expenses, continued payment will be a hardship for me." Debtor also relied on her response to a request for admission that "repaying Your Student Loan Debt under Your Income-Based Repayment Plan does not impose an undue hardship." Debtor denied the request. Finally, Debtor referred to her schedules I and J, which show negative monthly income.

---

[3] Italics added.
[4] Debtor's student loans were previously serviced by Nelnet. Defendant Educational Credit Management Corporation (ECMC) is the present guarantor and owner of the student loans. Nelnet is not a party.

Debtor also filed a motion asking to amend her interrogatory responses. She wants to amend the italicized portion of her answer to interrogatory no. 2 to state: "the monthly income-based payment amount calculated by Nelnet, in and of itself, does present a hardship when you consider it in totality along with the rest of my current monthly expenses[.]"  She seeks to amend her response to interrogatory no. 7 to state: "Even if I removed the Nelnet payment from my current monthly expenses, I would still have more outgoing in expenses than I have money coming in through income."

More recently, Debtor has asked to be allowed to amend her complaint to allege that the monthly payments are an undue hardship.

B.  <u>Summary Judgment Standards</u>.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact," thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. West Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.  <u>The IBRP</u>.

Federal student loan regulations are codified in 34 C.F.R. § 685 et seq., titled the "William D. Ford Federal Direct Loan Program." Contained in Subpart B-Borrower Provisions is

§ 685.208(m), titled "Income-based repayment plan." Specific regulations for IBRPs are found in § 685.221.[5]

Under the regulations, two primary benefits of a IBRP are readily apparent: the monthly payments can be substantially lower than the contract rate, § 685.221(b)(1), and after the borrower completes the 25-year repayment plan, the unpaid debt is forgiven. § 685.221(f). It is a very generous program, one that could never be offered by a private lender.

Debtor has taken advantage of the program. Without it, her monthly payment would be about $1,064.28. Under her IBRP, that amount was reduced more than 75%, to $259.84. If she continues with the IBRP, Debtor's unpaid loan balance (which she estimates would then be about $145,500) will be forgiven in 11 years.

D.  Income Tax Consequences of Debt Forgiveness.

There is a potential downside to completing an IBRP and having a student loan forgiven. Under the Internal Revenue Code, the general rule is that discharge of indebtedness is a form of gross income. 26 U.S.C. § 61(a)(11). Thus, if a borrower completes a 25 year IBRP and has $100,000 of debt forgiven, she would have an additional $100,000 in taxable income. At a 28% tax rate (for example), she would owe an additional $28,000 in federal income taxes.

A relevant exception to the general rule is that "[g]ross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if . . . the discharge occurs when the taxpayer is insolvent." 26 U.S.C. § 108(a)(1)(B). Solvency is determined immediately before the discharge

---

[5] The regulation allows qualifying borrowers to limit monthly loan payments to "no more than 15 percent of the amount by which the borrower's adjusted gross income exceeds 150 percent of the poverty line income applicable to the borrower's family size, divided by 12." 34 C.F.R. § 682.215(b)(1).

of indebtedness. 26 U.S.C. § 108(d)(3); *Bui v. Comm'r of Internal Revenue*, 2019 WL 2193420, at *5 (Tax Court). The excluded amount cannot exceed the amount by which the taxpayer is insolvent. 26 U.S.C. § 108(a)(3); *Bui*, 2019 WL 2193420, at *5.

Under the hypothetical discussed above, if the borrower was insolvent by $60,000 immediately before her student loans were forgiven, she would have taxable income of $40,000 resulting from the forgiveness and would owe $11,200 in federal income tax (i.e. 28% of $40,000).

E.    The Undue Hardship Standard.

Under the Bankruptcy Code, most student loan debt is excepted from discharge unless the debtor proves that "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents[.]" § 523(a)(8).[6] "Undue hardship" is not defined, so courts have developed a number of tests to determine it. *See, e.g.*, *In re Faish*, 72 F.3d 298, 302 (3d Cir. 1995) ("[B]ankruptcy courts use a wide variety of tests to determine whether the debtor has demonstrated undue hardship," which have "received varying degrees of acceptance."); *In re Woodcock*, 45 F.3d 363, 367 (10th Cir. 1995) (identifying various tests).

The Tenth Circuit adopted the test in *Brunner v. New York State Higher Educ. Serv's Corp.*, 831 F.2d 395 (2d Cir. 1987). *See Educ. Credit Mgm't Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004) ("We . . . join the majority of the other circuits in adopting the *Brunner* framework."). The *Brunner* test requires a debtor claiming undue hardship to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

---

[6] Unless otherwise noted, statutory references are to 11 U.S.C.

The debtor bears the burden of satisfying all three elements. *In re Regan*, 590 B.R. 567, 573 (Bankr. D.N.M. 2018). Failure to satisfy any element renders the debt nondischargeable. *Id.*

F. <u>Debtor's Original Theory of the Case and Defendant's Motion</u>.

Debtor's complaint advances the theory that her potential income tax liability 11 years from now creates an undue hardship. The complaint nowhere alleges that her monthly payments impose an undue hardship.[7] Debtor's interrogatory responses can be read to admit that making the monthly payments is not a hardship.

Based on Debtor's discovery responses, ECMC moved for summary judgment,[8] arguing that Debtor cannot satisfy the first prong of the *Brunner* test. Debtor disputes ECMC's interpretation of her discovery responses. Her affidavit in opposition to summary judgment states that the monthly payments *are* an undue hardship. Debtor argues that her discovery responses are consistent with her affidavit.[9]

Debtor's summary judgment response raises a fact issue, however her discovery responses are interpreted. If ECMC's interpretation is accurate, then Debtor has changed her story. She is entitled to do that, knowing that her trial testimony will be subject to impeachment. On the other hand, if Debtor's interpretation is correct, then there clearly is and has always been a fact issue. Either way, the Court must give Debtor a chance to try this hotly contested issue.

---

[7] Debtor has asked for leave to file an amended complaint alleging that the monthly payments are an undue hardship.
[8] ECMC never sought relief under Fed. R. Civ. P. 12(b)(6) or 12(c). If it had, the issues raised in ECMC's summary judgment motion likely would have come up long before now.
[9] Nevertheless, Debtor has asked for permission to amend those responses to make them clearer.

-8-
Case 19-01085-t    Doc 43    Filed 10/16/20    Entered 10/16/20 15:06:01 Page 8 of 11

G. ECMC is Entitled to Partial Summary Judgment That Future Tax Consequences are Insufficient by Themselves to Justify an Undue Hardship Discharge.

ECMC argues that possible tax liability arising from possible, eventual debt forgiveness has no bearing on undue hardship under the *Brunner* test. ECMC's argument has some merit: the *Brunner* test focuses on Debtor's current circumstances, her likely circumstances during the repayment period, and her historical efforts to repay the loan. No mention is made of future tax consequences of debt forgiveness, nor any other consideration about a debtor's financial situation when and if the loan is finally paid or forgiven.

Some courts have held that the future tax consequences of debt forgiveness are not relevant to an undue hardship analysis. *See, e.g., Educ. Credit Mgmt. Corp. v. Brondson*, 421 B.R 27, 35 (D. Mass. 2009) ("It was legal error for the Bankruptcy Court to hold that 'participation in the [income-based repayment program] would result in a tax liability' because any tax liability is strictly contingent on [the debtor's] financial status in the far future"); *In re Archibald*, 280 B.R. 222, 229-30 (Bankr. S.D. Ind. 2002) ("The charge of [the c]ourt under § 523(a)(8) is to determine the issue of undue hardship as of today, not some date in the future."); *Polleys*, 356 F.3d at 1310 (trial court's "inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan.").

Predictions about future income tax liability are speculative and difficult. *See*, *e.g.*, *Brondson*, 421 B.R. at 35 ("predictions of tax liability at the conclusion of [the repayment] period are necessarily speculative"); *Jones v. Bank One, Texas*, 376 B.R. 130, 142 n.11 (W.D. Tex. 2007) (forecasting the tax liability and consequences of debt forgiveness would be "sheer speculation"); *Educ. Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 818 n.8 (N.D. Fla. 2003) (same); *In re Greene*, 484 B.R. 98, 118 (Bankr. E.D. Va. 2013) ("[T]he potential tax implications are too speculative to influence the determination of dischargeability of the [s]tudent [loan]."); *In re Echelbarger*, 600

B.R. 39, 50 (Bankr. S.D. Ind. 2019) (same); *In re Chance*, 600 B.R. 51, 61 (Bankr. S.D. Ind. 2019) ("[Plaintiffs'] entire argument is based on their belief that they do not now, nor will they in the future, have sufficient disposable income or assets to live above a meager standard of living. If that is true, it is unlikely that they will incur a significant tax burden at the end of the repayment period."); *Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 782 (8th Cir. 2009) (reversing the bankruptcy and district courts' undue hardship determination which was based, in part, on the "potentially significant tax bill" after the twenty-five year repayment period); *In re Johnson*, 543 B.R. 601, 610 (W.D. Mo. 2015) (the debtors' argument regarding tax consequences of debt forgiveness was "too speculative for consideration"); *In re Paul*, 337 B.R. 730, 739 (Bankr. D. Mass. 2006) (rejecting debtor's tax consequences argument because her financial situation could improve or she could settle with the IRS).

Nevertheless, the Tenth Circuit has directed trial courts to consider all facts and circumstances when ruling on a student loan hardship discharge. *Polleys*, 356 F.3d at 1308-09. In this district, Chief Judge Jacobvitz considered the potential tax consequences of debt forgiveness when applying the *Brunner* test. *See In re Murphy*, 2018 WL 2670455, *13 (Bankr. D.N.M.) ("The tax consequences at the end of a 20-year or 25-year IBRP plan repayment period is relevant to the undue hardship analysis."). In accordance with *Polleys*, at trial the Court will consider the potential debt forgiveness at the end of Debtor's repayment period.

However, ECMC is entitled to a partial summary judgment that if Debtor cannot satisfy the first element of the *Brunner* test (e.g., if the Court were to find that Debtor can maintain a minimal standard of living while paying $259 a month to ECMC), then the Court could not grant her an undue hardship discharge. In other words, while future income tax liability should be

considered when deciding whether a borrower has satisfied all three elements of the *Brunner* test, it cannot by itself be grounds for an undue hardship finding.

Further, discharging a student loan based solely on possible future income tax liability would be contrary to the policy considerations underlying § 523(a)(8)—i.e., "to prevent abuses in and protect the solvency of educational loan programs." *In re Faish*, 72 F.3d at 302; *see also Polleys*, 356 F.3d at 1310 (the *Brunner* test "comports with the legislative policy behind § 523(a)(8), that student loans should not as a matter of policy be dischargeable before the debtor has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt"). If borrowers can pay some amount each month, it would shortchange the government to discharge the debt before the end of the IBRP. In this case, for instance, Debtor is paying about $260 a month or $3,120 a year. If the debt were discharged now, the government would lose about $34,320. Moreover, if Debtor's financial situation changes (e.g., if she receives an inheritance), she might be able to repay her student loans.

## Conclusion

ECMC is entitled to partial summary judgment that the potential tax consequences of student loan debt forgiveness, by themselves, are not enough to render the debt dischargeable. Because there is a genuine issue whether Debtor can satisfy the *Brunner* test based on her current financial situation, the balance of ECMC's motion must be denied.

                                          Hon. David T. Thuma
                                          United States Bankruptcy Judge

Entered: October 16, 2020
Copies to: Counsel of Record